STATE of Wisconsin, Plaintiff-Respondent,

v.

Isaac HUGHES, Sr., Defendant-Appellant.

Court of Appeals

*No. 2010AP1322–CR. Submitted on briefs April 7, 2011.
—Decided May 17, 2011.*

2011 WI App 87

(Also reported in 799 N.W.2d 504.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Benbow Cheesman* of *The Appellate Practice of West Allis*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *Marguerite M. Moeller*, assistant attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. CURLEY, P.J. Isaac Hughes, Sr., appeals from a judgment convicting him of escaping from the Felmers Chaney Correctional Center ("Chaney"). He also appeals from the trial court's order denying his postconviction motion. Hughes argues that we must reverse the judgment and order because the evidence at trial was insufficient to convict him. Specifically, according to Hughes, there was no evidence that he was in custody at Chaney as a result of being sentenced for a crime, the second of the four elements of escape; this is because Hughes's previous judgment of conviction—pursuant to which Hughes was in custody at Chaney in the first place—was never published for the jury, although it was in fact received into evidence. In other words, Hughes argues that because the jury never actually saw the judgment of conviction, it had no basis to determine that he had been previously sentenced for a crime. Hughes further argues that trial testimony regarding his status as an inmate at Chaney, and

testimony describing his previous judgment of conviction, cannot establish that he was in custody as a result of being sentenced for a crime because the evidence does not specify for which crime he had been previously convicted. We disagree with Hughes's contentions. We hold that the testimony adduced at trial in this case sufficiently established the second element of escape, regardless of whether the jury actually saw the certified judgment of conviction. Moreover, we conclude that there is no requirement that a prosecutor must establish exactly which crime a defendant was sentenced for in order to prove the second element of escape. Accordingly, we affirm.

## I. BACKGROUND.

¶ 2. Hughes was charged with escape, contrary to WIS. STAT. § 946.42(3) (2007–08).[1] According to the complaint, on May 13, 2008, Hughes, who was serving time at Chaney after being convicted of being a felon in possession of a firearm and for resisting or obstructing an officer, was seen running out the north hall door. Prior to his escape, Hughes had been placed and secured in Chaney's temporary lockup room; however, when the door was opened, he exited the room and the building. According to the complaint, "he left on his own and did not return . . . thus violating the rules and conditions governing the defendant at [Chaney]." Furthermore, "no one in authority gave [Hughes] permission to be absent . . . and no one gave any explanation for [Hughes's] absence." Hughes pled not guilty to the escape charge and his case went before a jury.

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

¶ 3.　In his opening statement, Hughes's attorney explained to jurors that of the various elements of escape, the elements requiring that Hughes be in custody, and in custody as a result of being sentenced for a crime, were not in dispute:

> [Y]ou will see evidence, perhaps hear it as well, from correctional officers that May 13 was the day that Mr. Hughes supposedly left the Fel[]mers Chaney Center, which he did leave on that day, but . . . there are other elements, not just that he was in custody, and not just that he was in custody after being sentenced to a crime. The State is going to prove that. We're not hiding that he was in custody for a crime he previously committed . . . .

(Punctuation added.)

¶ 4.　Instead, trial counsel explained that the elements at issue were whether Hughes had permission to leave Chaney and whether Hughes intended to escape:

> [The State] also [has] to prove that he escaped from custody, which means to leave without any lawful permission. Key on those words, without lawful permission or authority. You have to find that he had no permission or authority to leave.
>
> They [also] have to show that he intentionally left that facility [with] the mental purpose to escape from there. That's the other area of doubt. Judge for yourselves, using your common sense. You can't look into Mr. Hughes' mind, but using your own common sense, judge whether you think that Mr. Hughes thought of or had the mental purpose to intentionally escape from Felmers Chaney. And that's what this case is about.

(Punctuation added.)

¶ 5.　At trial, three Chaney employees testified, including Captain Eloise McPike. McPike testified that

on May 13, 2008, her control sergeant and her floor sergeant informed her that Hughes—an inmate at Chaney—had escaped from temporary lockup. Hughes had been placed in temporary lockup in preparation for his removal from Chaney, a minimum security prison, to a more secure facility because he violated one of Chaney's rules. A corrections officer had left the lockup door open after bringing Hughes a glass of water, and Hughes had somehow gotten out of his handcuffs, exited the room, sprinted down the corridor, and jumped the fence.

¶ 6. McPike further testified that after Hughes went missing from Chaney, she ordered an "escape packet" pertaining to Hughes. Specifically, McPike testified: "Once [an] inmate has been gone, leaves our facility without permission, we order an escape packet that I have to put together for the assistant D.A." (Punctuation added.) She further explained that the escape packet includes a judgment of conviction for the missing inmate.

¶ 7. After McPike described the escape packet containing Hughes's judgment of conviction, the prosecutor moved it into evidence without objection. The prosecutor then addressed the trial court, saying, "I would like to publish this to the jury, but we could wait for a later time if that is more convenient." The trial court responded, "All right. It's not going to happen at this time." Although the escape packet containing Hughes's judgment of conviction was received into evidence, it was never published to the jury.

¶ 8. Additionally, another of the State's three witnesses, Sergeant Elizabeth Knaack, who saw Hughes in temporary lockup shortly before he absconded, testified that she never gave Hughes permission to leave Chaney and she never told Hughes that his sentence was over.

¶ 9. The jury convicted Hughes of escape, and Hughes was sentenced. Hughes filed a postconviction motion, arguing that there was insufficient evidence to prove the second element of escape, namely, that Hughes was in custody "as the result of having been convicted and sentenced for a crime." The trial court denied Hughes's motion, and Hughes now appeals.

## II. ANALYSIS.

¶ 10. On appeal, Hughes challenges the sufficiency of the evidence regarding the second element of escape. We cannot reverse a criminal conviction unless the evidence, viewed most favorably to the State and the conviction, " 'is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.' " *State v. Booker*, 2006 WI 79, ¶ 22, 292 Wis. 2d 43, 717 N.W.2d 676 (citation omitted); *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). If there is any possibility that the jury could have drawn the appropriate inferences from the trial evidence to find guilt, we may not overturn a verdict—even if we believe that the jury should not have convicted the defendant on the evidence presented. *Poellinger*, 153 Wis. 2d at 507. We review sufficiency of the evidence claims in the light most favorable to the jury's verdict. *Booker*, 292 Wis. 2d 43, ¶ 22; *Bautista v. State*, 53 Wis. 2d 218, 223, 191 N.W.2d 725 (1971). Reasonable inferences drawn from the evidence can support a finding of fact and, if more than one reasonable inference can be drawn from the evidence, we must adopt the inference that supports the verdict. *Poellinger*, 153 Wis. 2d at 506–07.

¶ 11. Furthermore, a conviction can be based in whole or in part upon circumstantial evidence. *State v. Hirsch*, 2002 WI App 8, ¶ 5, 249 Wis. 2d 757, 640 N.W.2d 140. Circumstantial evidence is often more probative than direct evidence; indeed, circumstantial evidence alone may be sufficient to convict. *Poellinger*, 153 Wis. 2d at 501.

¶ 12. We agree with the trial court that, when considered in light of all the other evidence adduced at trial, McPike's testimony sufficiently allowed the jury to conclude beyond a reasonable doubt that Hughes was serving a sentence for a crime that he was convicted of when he left Chaney without permission. McPike testified that Hughes was an "inmate" at Chaney, a minimum security prison. She also testified that on May 13, 2008, her control sergeant and floor sergeant advised her that Hughes had escaped from the temporary lockup. McPike further testified that after Hughes escaped, she ordered an escape packet, which contained Hughes's judgment of conviction, and Knaack testified that she never told Hughes that his sentence was over. Viewing this testimony in the light most favorable to the verdict, as we are required to do, *see Poellinger*, 153 Wis. 2d at 506–07, we hold that the knowledge that Hughes was an inmate at a prison whose sentence had not yet expired and that McPike had received a judgment of conviction pertaining to him was sufficient for the jury to conclude that the reason Hughes was at Chaney was because he was serving a sentence, regardless of whether the jury actually saw the judgment of conviction.

¶ 13. Moreover, we find Hughes's arguments on appeal unavailing. First, for the reasons explained

above, we find Hughes's primary argument, that the *only* evidence that could have established that he was in custody as the result of being sentenced for a crime was either the judgment of conviction or testimony from the judge who previously sentenced him, unconvincing. In this particular case, McPike's and Knaack's testimony sufficed. *See Booker*, 292 Wis. 2d 43, ¶ 22; *Poellinger*, 153 Wis. 2d at 506–07. Second, we are not persuaded by Hughes's contention that the testimony was insufficient because: (a) it did not establish which specific crime Hughes was sentenced for; and (b) McPike did not use the word "sentence" when she discussed Hughes's judgment of conviction. There are four elements to an escape charge under Wis. Stat. § 946.42(3)(a) (2007–08): (1) that the defendant was in custody; (2) that the custody was the result of being sentenced for a crime; (3) that the defendant escaped from custody; and (4) that the escape was intentional. *See also* Wis JI—Criminal 1774; Wis. Stat. § 946.42(1) (defining "escape" and "custody"). Nowhere does the statute require the State to prove exactly which crime the defendant was sentenced for, nor does it require utterance of the word "sentence" in any testimony offered to prove the second element, *see Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 14, 294 Wis. 2d 274, 717 N.W.2d 781 (we construe statutes to effect their plain, ordinary meanings), and Hughes points us to no authority for these contentions.[2] *See State v. McMorris*, 2007 WI App 231, ¶ 30, 306 Wis. 2d 79, 742 N.W.2d 322 ("[W]e may choose not to consider arguments unsupported by references to legal authority, arguments that do not reflect any legal

---

[2] We also note that although Captain McPike may not have testified that Hughes was "sentenced," Sergeant Knaack did testify that she never told Hughes that his "sentence" was over.

reasoning, and arguments that lack proper citations to the record.").

¶ 14. Finally, we note that the State invites us to hold, in keeping with the trial court's denial of Hughes's postconviction motion,[3] that Hughes forfeited his right to challenge the sufficiency of the evidence. Because it is not necessary to the determination of the issue before us, we decline to do so. See *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases should be decided on narrowest possible ground). *See also State v. Gaines*, 197 Wis. 2d 102, 110 n.5, 539 N.W.2d 723 (Ct. App. 1995) (We may affirm a trial court's ruling on different grounds if the effect of our holding is to uphold the trial court's ruling.).

¶ 15. For all of the foregoing reasons, we cannot say that the jury had insufficient evidence upon which to find that Hughes was in custody at Chaney as a "result of being sentenced for a crime," nor can we say that the trial court erred in denying Hughes's postconviction motion. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.

---

[3] The trial court denied Hughes's postconviction motion on two bases: (1) that he waived his right to challenge the sufficiency of the evidence; and (2) even if Hughes did not waive his right to challenge the sufficiency of the evidence, the evidence was sufficient to convict him.