PER CURIAM.
¶1 Norman Earl Rhodes appeals a judgment entered after he pled guilty to two firearms offenses. He also appeals a postconviction order that denied both his motion for plea withdrawal and his renewed challenge to the circuit court's pretrial order denying suppression of evidence. We affirm.
Background
¶2 Milwaukee police entered the home of Monita Roundtree on April 14, 2015, and took Rhodes into custody. Following the arrest, police searched Roundtree's home and found, among other items, a number of firearms. The State charged Rhodes with two counts of possessing a firearm while a felon and one count of possessing a short-barreled shotgun.
¶3 Rhodes moved to suppress the evidence obtained pursuant to the entry into and search of Roundtree's home, arguing that law enforcement's actions were unlawful. The circuit court conducted an evidentiary hearing on the motion. At the conclusion of the hearing, the circuit court adopted the State's extensive proposed findings of fact. We summarize here the relevant findings, which Rhodes does not dispute on appeal.
¶4 The testimony of the arresting officers established that, as of April 14, 2015, Rhodes was the subject of an outstanding arrest warrant. Further, a confidential informant had given police a tip that Rhodes lived in a specified apartment in the 4000 block of North 27th Street, in Milwaukee, Wisconsin, and the informant had physically identified the door of the apartment for the officers. On April 14, 2015, police conducted surveillance outside the home and observed Rhodes go in and out of the apartment numerous times. After watching Rhodes enter the apartment a final time, the officers knocked on the door, identified themselves, and called to Rhodes by name. When Rhodes did not emerge from the apartment, officers announced they would force entry. The officers confirmed that the door was locked, then kicked it open and arrested Rhodes inside the home.
¶5 Roundtree was also in the apartment when police entered. The officers obtained her verbal and written consent to search the home. The search uncovered drugs and firearms.
¶6 Roundtree testified and established that she was the lawful tenant of the apartment and that Rhodes did not live with her. She further established that Rhodes visited her home less than twice a week and did not have a key to the apartment. When Rhodes visited, he was free to park outside her apartment and to come and go as he pleased.
¶7 Although the scope of the circuit court's factual findings encompassed the circumstances of both the entry into Roundtree's home and the subsequent search of that home, the circuit court ultimately concluded that Rhodes lacked standing to pursue any aspect of his suppression motion. Accordingly, the circuit court denied the motion.
¶8 Following the resolution of the suppression motion, Rhodes elected to resolve the charges against him with a plea bargain. He pled guilty to two counts of possessing a firearm while a felon; the charge of possessing a short-barreled shotgun was dismissed and read in for sentencing purposes. The circuit court accepted his guilty pleas and imposed two seven-year terms of imprisonment, concurrent with each other but consecutive to sentences previously imposed.
¶9 Rhodes moved for postconviction relief. He alleged that he was entitled to withdraw his guilty pleas because the plea colloquy was defective in several ways. He also alleged that the circuit court had erroneously denied his suppression motion. The circuit court rejected his claims without a hearing, and he appeals.
Discussion
¶10 We begin by addressing Rhodes's challenge to the validity of his guilty pleas. A defendant who wishes to withdraw a guilty plea after sentencing must establish that plea withdrawal is necessary to correct a manifest injustice. See State v. Annina , 2006 WI App 202, ¶9, 296 Wis. 2d 599, 723 N.W.2d 708. "One way the defendant can show manifest injustice is to prove that his plea was not entered knowingly, intelligently, and voluntarily." State v. Taylor , 2013 WI 34, ¶24, 347 Wis. 2d 30, 829 N.W.2d 482.
¶11 To ensure that a defendant's guilty plea is knowing, intelligent, and voluntary, the circuit court must, on the record, perform certain statutory and court-mandated duties during the plea hearing. See id. , ¶31. If the defendant believes that the circuit court did not fulfill those duties, the defendant may seek plea withdrawal based on the alleged deficiencies in the colloquy. See State v. Bangert , 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986).
¶12 A defendant moving for plea withdrawal pursuant to Bangert must both: (1) make a prima facie showing that the plea colloquy was defective because the circuit court failed to complete its duties; and (2) allege that the defendant did not know or understand the information that should have been provided at the plea hearing. See State v. Brown , 2006 WI 100, ¶39, 293 Wis. 2d 594, 716 N.W.2d 906. If the defendant's postconviction motion fails to make the twin showings required by Bangert , the circuit court may deny the motion for plea withdrawal without a hearing. See State v. Brown , 2012 WI App 139, ¶¶10-11, 345 Wis. 2d 333, 824 N.W.2d 916.
¶13 In this case, Rhodes asserts that the plea colloquy was defective because the circuit court did not "verify his complete understanding of the nature of the crimes," "failed to go over each constitutional right [ ] Rhodes would be waiving," did not question him to "determine the extent of [his] education and general comprehension" and "never explained the elements of the offenses." The State disputes Rhodes's characterization of the plea colloquy. We need not parse each component of the colloquy here to determine if it was sufficient to fulfill the circuit court's obligations. Assuming that Rhodes satisfied the first Bangert prong by showing that the plea colloquy was defective in one or more ways, Rhodes's postconviction motion was nonetheless inadequate to earn a hearing because he failed to include any allegations to satisfy the second Bangert prong.
¶14 To satisfy Bangert 's second prong, a defendant "is required to plead in his motion that he did not know or understand some aspect of his plea that is related to a deficiency in the plea colloquy."See Brown , 293 Wis. 2d 594, ¶62. As the Brown court explained, the ultimate question at a Bangert hearing "is whether the defendant's plea was knowing, intelligent, and voluntary, not whether the circuit court erred.... In the absence of a claim by the defendant that he lacked understanding with regard to the plea, any shortcoming in the plea colloquy is harmless." See Brown , 293 Wis. 2d 594, ¶63. Therefore, "[a] defendant must identify deficiencies in the plea colloquy, state what he did not understand, and connect his lack of understanding to the deficiencies." Id. , ¶67. Here, Rhodes did not claim in his postconviction motion that he lacked an understanding of any information that the circuit court is required to provide, much less tie an alleged lack of understanding to some deficiency in the plea colloquy. Accordingly, Rhodes's motion at best alleged harmless error, and the circuit court therefore properly denied the motion without a hearing. See id.
¶15 Rhodes next claims that the circuit court wrongly denied his suppression motion.[1] "The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution prohibit unreasonable searches and seizures." State v. Artic , 2010 WI 83, ¶28, 327 Wis. 2d 392, 786 N.W.2d 430. We review a circuit court's denial of a motion to suppress evidence under a two-part standard: "we will uphold the circuit court's findings of fact unless they are clearly erroneous. Whether those facts satisfy the constitutional requirement of reasonableness is a question of law, which we review de novo ." See State v. Young , 212 Wis. 2d 417, 424, 569 N.W.2d 84 (Ct. App. 1997) (italics added).
¶16 Preliminarily, we note the circuit court's conclusion that Rhodes lacked standing to pursue his claims. A person has standing to challenge the constitutionality of a search or seizure if the person establishes a "legitimate expectation of privacy in the invaded place." See State v. Trecroci , 2001 WI App 126, ¶26, 246 Wis. 2d 261, 630 N.W.2d 555 (citations omitted). According to the State, the circuit court correctly determined that Rhodes failed to establish a legitimate expectation of privacy in Roundtree's home. Rhodes contends otherwise. We need not resolve this dispute. Assuming without deciding that Rhodes has standing to pursue his claims, we conclude that his substantive arguments fail. See State v. Hughes , 2011 WI App 87, ¶14, 334 Wis. 2d 445, 799 N.W.2d 504 (We decide cases on the narrowest possible ground and may affirm the ruling of a circuit court for reasons other than those it relied upon if the effect is to uphold the circuit court's ruling.). We turn to those arguments.
¶17 Rhodes contends that "the police cannot legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant." Because the police officers here had an arrest warrant but not a search warrant, Rhodes asserts that their entry into Roundtree's home was presumptively illegal and that "no exigent circumstances" existed to overcome the presumption. In light of the alleged "illegal entry of the home," he contends that the circuit court erred in denying his suppression motion. We disagree.
¶18 "An arrest warrant authorizes the police to enter the suspect's residence to execute the warrant if there is reason to believe he will be found there; the officer does not need a search warrant." State v. Blanco , 2000 WI App 119, ¶10, 237 Wis. 2d 395, 614 N.W.2d 512 (citations omitted). If police enter a home on the authority only of an arrest warrant, the entry is lawful if police reasonably believe both that "the subject of the arrest warrant resides in the home," and "the subject of the arrest warrant is present in the home at the time entry is effected." See id. , ¶16. Moreover, "[t]o be reasonable is not to be perfect." Heien v. North Carolina , --- U.S. ----, 135 S. Ct. 530, 536 (2014). Therefore, a search and seizure can be reasonable even if based on a mistake of fact. See id. at 534, 536 ; see also State v. Houghton , 2015 WI 79, ¶43, 364 Wis. 2d 234, 868 N.W.2d 143 (quoting Heien , 135 S. Ct. at 534 ).
¶19 In this case, police had information from a confidential informant that Rhodes lived in an apartment that the informant identified with specificity. Police conducted surveillance of the home and corroborated the information. As Rhodes himself points out, the testimony of the officers established that they observed Rhodes "demonstrat[ing] physical dominion [over the home] by parking in the driveway, entering and leaving the house unescorted, and by locking the door as [the officers] approached." Rhodes's presence in the home, his freedom to come and go without restriction, and his demonstrations of dominion over the property all appeared to confirm the informant's tip regarding Rhodes's residency. Accordingly, the police reasonably believed the informant's tip. Cf. State v. Miller , 2012 WI 61, ¶31 n.18, 341 Wis. 2d 307, 815 N.W.2d 349 (an informant is considered reliable if, inter alia , police officers are able to corroborate details of the informant's tip through independent police work). Indeed, Rhodes offers no contrary argument.
¶20 Instead, Rhodes argues that he did not live in Roundtree's home and that the evidence established he was present there only as a guest. Rhodes's reliance on this argument is misplaced. The question is not whether he lived in the home but whether police reasonably believed that he lived there. See Blanco , 237 Wis. 2d 395, ¶16. As we have seen, the facts known to the officers reasonably led them to believe that Rhodes lived in the home. Because Rhodes was the subject of an arrest warrant on April 14, 2015, and because the police reasonably believed that he lived in the home that the officers saw him enter that day, we conclude as a matter of law that the police lawfully forced entry into the home to execute the arrest warrant. See id.
¶21 Before we close, we touch briefly on an additional matter that does not require extended discussion, namely, Rhodes's contention that police unlawfully searched Roundtree's apartment after arresting Rhodes. The record shows, and the circuit court found, that police searched Roundtree's home after obtaining Roundtree's verbal and written consent. A search conducted with consent is reasonable and, therefore, "a search conducted pursuant to a valid consent is constitutionally permissible." See State v. Wantland , 2014 WI 58, ¶20, 355 Wis. 2d 135, 848 N.W.2d 810 (citation omitted). Rhodes asserts in his reply brief that Roundtree's consent was coerced and therefore invalid, but his assertions come too late. We do not address matters raised for the first time in a reply brief. See State v. Marquardt , 2001 WI App 219, ¶14 n.3, 247 Wis. 2d 765, 635 N.W.2d 188.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

In an appeal from a judgment of conviction, we may review a circuit court's order denying a motion to suppress evidence notwithstanding the defendant's guilty plea. See Wis. Stat. § 971.31(10) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.